UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| AMERICAN AERIAL SERVICES, INC., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>TEREX USA, LLC, and )<br>THE EMPIRE CRANE COMPANY, LLC, )<br>)<br>Defendants. ) | DOCKET NO: 2:12-CV-00361-GZS |

## AMENDED COMPLAINT

Plaintiff, American Aerial Services, Inc., by and through its attorneys undersigned, hereby files its amended complaint against Defendants The Empire Crane Company, LLC and Terex USA, LLC, (collectively referred to as "Defendants") and alleges as follows:

1. American Aerial Services, Inc. ("American Aerial" or "Plaintiff") is a Maine corporation with a principal place of business in the Town of Falmouth, County of Cumberland, and State of Maine.

2. Terex USA, LLC ("Terex") is a Delaware limited liability company with a principal place of business in the City of Westport, County of Fairfield, and State of Connecticut.

3. The Empire Crane Company, LLC ("Empire Crane") is a New York limited liability company with a principal place of business in the City of North Syracuse, County of Onondaga, and State of New York.

4. Terex is in the business of manufacturing, among other products, truck cranes.

5. Empire Crane is an authorized Terex truck crane dealer and is authorized by Terex to sell and service Terex truck cranes.

6. American Aerial purchased a Terex T780 truck crane (the "Terex T780") from Terex and Empire Crane by a Purchase Contract dated December 16, 2011 (the "Purchase Contract"). Importantly, Empire Crane executed the Purchase Contract in its capacity as an authorized agent of Terex. *See* copy of the Purchase Contract attached hereto as Exhibit 1.

7. On December 22, 2011, the parties modified the Purchase Contract to provide that if the Terex T870 was not delivered to American Aerial by 11:49 a.m. on December 31, 2011, the contract was invalid. In other words, Defendants had a very specific deadline by which the Terex T870 had to be delivered to Plaintiff. *See* copy of the modified Purchase Contract attached hereto as Exhibit 2.

8. Terex represented to American Aerial as well as to other customers in its sales literature, owner's manual and other sales statements that the Terex T780 had a certain rated lifting capacity. Specifically, Terex included load charts in its sales data sheets listing the rated lifting capacity of the Terex T780; these load charts represented the lifting capacity in various configurations with a maximum lifting capacity of 80 tons.

9. As one of the final steps in the manufacturing process, Terex was responsible for performing a final inspection to determine whether the Terex T780 could safely perform its rated lifting capacity.

10. Notwithstanding this obligation, Terex failed to perform a final inspection of the Terex T780 to determine whether the Terex T780 could safely perform its rated lifting capacity prior to release of the Terex T870 for delivery or sale.

11. Despite representations to the contrary, the Terex T780 could not safely perform its rated lifting capacity because of, *inter alia*, defective welds during the manufacturing process.

12. After the manufacture of the Terex T780, Terex knew or should have known that because of manufacturing defects, including but not limited to defective welds, the Terex T780 did not have the represented safe lifting capacity.

13. Terex completed the manufacture of the Terex T780 on July 8, 2011. After the manufacture of the Terex T780, Terex sold it to a dealer in Ontario, Canada on July 11, 2011. The Terex dealer in Ontario, Canada did not take delivery of the Terex T780, but transferred the Terex T780 to Empire Crane prior to the sale to American Aerial; Defendants failed to inform American Aerial of this transaction.

14. After the sale of the Terex T780 to the Ontario, Canada dealer on July 11, 2011, Terex never delivered the Terex T780, but instead stored the Terex T780 for over five months on a Terex open air storage lot in Waverly, Iowa.

15. As set forth in Terex's published procedures, specific storage protocols and procedures must be followed when a model Terex T780 truck crane is stored for more than 30 days without being used in order to prevent damage to the model Terex T780 during storage; these procedures and protocols include, but are not limited to, draining of hydraulic systems and treatment of engine fuels.

16. Terex failed to follow these specific storage protocols and procedures while the Terex T780 was stored for more than 30 days without being used.

17. Because of its failure to perform the storage protocols and procedures with respect to the Terex T780, as well as the earlier sale to the Canadian dealer, after storage the Terex T780 was no longer a newly manufactured crane.

18. In its sales literature and in statements by its authorized agent Empire Crane, Terex and Empire Crane falsely represented to American Aerial that the Terex T780 was a new truck crane.

19. By email dated December 14, 2011, an Empire Crane sales representative, as an authorized agent of Terex, represented that the Terex T780 was newly manufactured and had "just come off the line."

20. On or about December 15, 2011, Empire Crane, as an authorized agent of Terex, provided a sales document published by Terex that contained load charts listing the safe rated lifting capacity of the Terex T780 (the "Sales Document"). *See* copy of the Sales Document attached hereto as Exhibit 3.

21. After receiving the above mentioned the Sales Document and the December 14, 2011 email, American Aerial reviewed the Sales Document and email and relied on the accuracy of that information in making its decision to purchase the Terex T780.

22. American Aerial would not have purchased the Terex T780 if it had known that the Terex the Sales Document misrepresented the rated lifting capacity.

23. Terex and Empire Crane knew or should have known that the representation that the Terex T780 was a new truck crane was false, and this representation was made by Terex and Empire Crane knowing the falsity of the representation, or at a minimum in reckless disregard of the truth or falsity of the representation.

24. Additionally, by failing to disclose to American Aerial the prior sale to the Ontario, Canada dealer and the prolonged storage of the Terex T780, Terex misrepresented the actual condition of the Terex T780.

25. Terex knew or should have known that by failing to disclose to American Aerial the prior sale and prolonged storage of the Terex T780, that Terex was falsely representing the condition of the Terex T780, and that this misrepresentation was material to American Aerial's decision to purchase the Terex T780 because American Aerial would not have purchased the Terex T780 if the prior sale and prolonged storage had been correctly represented.

26. The omission by Terex of the prior sale and prolonged storage was material to American Aerial's decision to purchase the Terex T780 because American Aerial would not have purchased the Terex T780 if the prior sale and prolonged storage had been disclosed.

27. By releasing the Terex T780 for sale, Terex made a representation that the engine was in proper working order.

28. Terex knew or should have known, through the final inspection process, that there were problems with the Terex T780 engine and/or that there were problems with the amount of coolant in the engine.

29. Terex knew or should have known that by failing to disclose to American Aerial the prior sale and prolonged storage of the Terex T780, that Terex was falsely representing the condition of the engine of the Terex T780, and that this misrepresentation was material to American Aerial's decision to purchase the Terex T780 because American Aerial would not have purchased the Terex T780 if problems with the engine and coolant were disclosed.

30. Pursuant to the terms of the Purchase Contract, as modified, Empire Crane in conjunction with Terex arranged for the delivery of the Terex T780 from Terex's storage lot located in the State of Iowa for delivery to the Town of Gray, Maine. As such, the delivery driver was an agent of Empire Crane and Terex.

31. Upon information and belief, Empire Crane, individually and as an agent of Terex, instructed the driver that the delivery deadline had to be met and even offered incentives to the driver for meeting this deadline.

32. Upon information and belief, during the transport of the Terex T780, Empire Crane, individually and as an agent for Terex, had regular contact with the driver by telephone from December 27, 2011 through December 31, 2011.

33. Upon information and belief, during the transportation of the Terex T780, audible and visual warning mechanisms advised the driver that there were problems with the Terex T780 engine.

34. Notwithstanding these warnings, the driver continued to transport the Terex T780 without properly addressing these warnings in an effort to meet the delivery deadline and ignoring the warning signs, including the warning of low coolant.

35. Upon information and belief, the driver reset certain warning mechanisms during the transport of the Terex T780 without properly addressing the underlying cause for the warning.

36. The driver knowingly and intentionally drove the Terex T780 with low coolant for approximately 1,500 miles.

37. At the time of delivery, on December 31, 2011, the driver made a representation to American Aerial that the yellow warning light illuminated only toward the end of his delivery and that he checked the fluids, which were not low.

38. Moreover, at the time of delivery, the driver, an agent of Empire Crane and Terex, failed to disclose the fact that the warning lights were ignored, and were reset multiple times during delivery and that the coolant was unusually low.

39. The driver, an agent of Empire Crane and Terex, made this representation knowing the falsity of the representation or at a minimum in reckless disregard of the truth or falsity of the representation.

40. American Aerial relied on the driver's representations and omissions when accepting delivery of the Terex T780, and these representations and omissions were material to American Aerial's decision to purchase the Terex T780 because American Aerial would not have accepted delivery (thereby completing the sale transaction) if the true nature of the damage to the engine and coolant system had been disclosed.

41. The bill of lading makes a representation that the boom was stowed and strapped down, that the Terex T780 was free of body damage, and all lights were operating. It also provided that a Driver DOT inspection was conducted.

42. The Terex T780 suffers from a manufacturing defect that prevents the "house lock" on the Terex T780 from correctly stowing and securing the crane boom while being driven over the highway or being maneuvered on a job site.

43. The representations that the boom was stowed and strapped down, the Terex T780 was free of bodily damage, all lights were operating and a Driver DOT Inspection was conducted were representations made by the driver, an agent of Empire Crane and Terex, with knowledge of the falsity of the representations, or at a minimum in reckless disregard of the truth or falsity of the representations.

44. American Aerial relied on the driver's above representations when accepting delivery of the Terex T780, and these representations were material to American Aerial's decision to purchase the Terex T780 because American Aerial would not have accepted delivery (thereby completing the sale transaction) if these deficiencies had been disclosed.

45. American Aerial would not have accepted delivery if it had been aware that the house lock had been defectively manufactured and did not allow the crane boom to be correctly stowed and secured while the Terex T780 was driven on the highway or maneuvered on a job site.

46. Empire Crane, individually and as an agent for Terex, conducted an inspection of the Terex T780.

47. On January 6, 2012, Empire Crane issued to Plaintiff a Certificate of Inspection, certifying that the Terex T780 met "Annual OSHA/ANSI B.30, PCSA #2, PCSA #4" requirements.

48. Empire Crane, individually and as an agent of Terex, made a misrepresentation that the Terex T780 met OSHA requirements because, in reality, the Terex T780 failed to meet several OSHA requirements, including but not limited to OSHA standards, 29 CFR Part 1926 Subpart CC.

49. Empire Crane knew or should have known that the Terex T780 did not meet several OSHA requirements.

50. American Aerial relied on the Certificate of Inspection and the misrepresentation was material as it would not have purchased the Terex T780 if it knew that the Terex T780 failed meet several OSHA requirements.

51. After its purchase of the Terex T780, American Aerial experienced numerous problems with the Terex T780.

52. In August 2012, the Terex T780 failed an inspection because of manufacturing defects, and a deficiency report was issued which prevented the Terex T780 from being placed back into service.

53. In September 2012, as a result of the deficiencies determined by the inspection in August 2012, American Aerial had a comprehensive inspection performed on the Terex T780 (the "September 2012 Inspection").

54. As a result of the September 2012 Inspection, numerous manufacturing defects were found, including multiple weld defects on the jib and boom components, lack of fusion in welds, lack of fill and weld spatter.

55. As a result of the August and September 2012 Inspections, American Aerial has not been able to use the Terex T780 in American Aerial's business.

56. American Aerial financed the Terex T780 through Terex Financial Services, Inc., a company affiliated with Terex.

57. American Aerial continues to be obligated to make monthly payments in excess of $10,000 to Terex Financial Services, Inc. despite the inability to use the Terex T780 in American Aerial's business.

58. As a result of the numerous mechanical problems and the manufacturing defects, including but not limited to the problems with the Terex T780 diesel engine, the improper welds, as well as other deficiencies, American Aerial has incurred substantial expenses related to the Terex T780.

59. As a result of the manufacturing defects, as well as problems with the Terex T780 engine, American Aerial has lost business and incurred substantial business losses related to the inability to use the Terex T780.

## COUNT I
## BREACH OF CONTRACT/BREACH OF WARRANTY
(against Terex and Empire Crane)

60. American Aerial repeats and realleges the allegations contained in Paragraphs 1 through 59 above as if fully recited herein.

61. Defendants have breached the Purchase Contract and breached express and implied warranties, including but not limited to implied warranties of merchantability, suitability and fitness for a particular purpose.

62. As a result of Defendants' breach of contract and breach of express and implied warranties, American Aerial has incurred damages, including but not limited to the cost of repairs to the Terex T780, lost revenue and lost profits, expenses related to the Terex T780 and continuing payments to Terex Financial Services, Inc., as well as other incidental and consequential damages.

63. As a result of Defendants' breach, American Aerial has offered to tender back to Defendants the Terex T780 if Defendants would return the purchase price and reimburse American Aerial for its damages.

64. Defendants have refused to accept back the Terex T780 and have also refused to pay American Aerial's damages.

65. Defendants are responsible for reimbursing American Aerial for all its damages, including its incidental and consequential damages resulting from their breach.

### COUNT II
### BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING
(against Terex and Empire Crane)

66. American Aerial repeats and realleges the allegations contained in Paragraphs 1 through 65 above as if fully recited herein.

67. Defendants owed a duty to American Aerial to act in good faith and fair dealing and breached those duties to American Aerial in the sale of the Terex T780.

68. For the reasons set forth above, Defendants breached their duty of good faith and fair dealing to American Aerial.

69. As a result of Defendants' breach, American Aerial has suffered substantial damages, including but not limited to incidental and consequential damages.

70. Defendants are liable for all damages, including incidental and consequential damages, caused by their breach.

**COUNT III**
**INTENTIONAL MISREPRESENTATION/FRAUD**
**(against Terex)**

71. American Aerial repeats and realleges the allegations contained in Paragraphs 1 through 70 above as if fully recited herein.

72. By allowing the Terex T780 to pass final inspection (and/or failing to actually perform the final inspection) prior to leaving its facility, Terex made a representation that the engine was in proper working order.

73. This representation was false and Terex knew or should have known, through the inspection process, that there were problems with the Terex T780 engine and/or that there were problems with the coolant.

74. Terex made a representation to American Aerial in its sales literature, owner's manual and other sales statements that the Terex T780 had the safe rated lifting capacity as set forth in its sales literature data sheets.

75. This representation was false because the Terex T780 could not safely perform the rated lifting capacity because of defective welds in the manufacturing process, a fact that Terex knew or should have known through the inspection process.

76. American Aerial relied on Terex's material misrepresentations that the Terex T780 was in proper working order and could safely perform the rated lifting capacity contained in Terex's sales literature data sheets when deciding to purchase the Terex T780. Moreover, Plaintiff would not have purchased the Terex T780 if it had known that machinery was not in proper working order and could not safely perform the rated lifting capacity represented by Terex.

77. In its sales literature and in statements by its authorized agent Empire Crane, Terex falsely represented to American Aerial that the Terex was a new crane.

78. This was a false representation because Terex stored the Terex T780 crane for five months in an open air storage lot without following required protocols and procedures for prolonged storage, and the failure to perform the protocols and procedures on the Terex T780 meant that the Terex T780 was not a newly manufactured truck crane.

79. Terex knew or should have known that its representation that the Terex T780 was a new truck crane was false.

80. American Aerial relied on the misrepresentation of Terex that the T780 was a new truck crane when deciding to purchase the Terex T780 and that was material as American Aerial would not have entered into the sale transaction if the prolonged storage without proper procedures or protocols had been disclosed.

81. As set forth above, the Purchase Contract required the Terex T780 to be delivered to American Aerial by December 31, 2011 and that the driver knew of this strict deadline.

82. At the time of delivery, the driver made a representation that the yellow warning light illuminated toward the end of his delivery and that he checked the fluids, which were not low.

83. This representation was false because the computer history demonstrates a pattern of ignoring and/or turning off the warning systems and the facts demonstrate the coolant was unusually low.

84. American Aerial relied on this misrepresentation made by the driver when deciding to purchase the Terex T780 (by accepting delivery) and this misrepresentation was material because American Aerial would not have consummated the sale if the driver had disclosed the problems with the engine and coolant.

85. The bill of lading makes a representation that the crane boom was stowed and strapped down, that the Terex T780 was free of body damage, and all lights were operating. It also provided that a Driver DOT inspection was conducted.

86. This is a false representation because, during the course of transportation, the boom was not properly stowed and strapped down, and the Terex T780 was not free of body damage.

87. American Aerial relied on these representations when accepting delivery of the Terex T780 and would not have accepted delivery (thereby completing the sale transaction) if the driver had not made such false representations.

88. Terex made the false representations set forth above with knowledge of the falsity of the representations or at a minimum with disregard of whether the representations were true or false.

89. Terex intended American Aerial to rely upon the above false representations.

90. American Aerial relied on Terex's false representations to American Aerial's detriment which resulted and continues to result in substantial monetary damages to American Aerial.

91. Terex is liable for all damages, including but not limited to incidental and consequential damages suffered by American Aerial as a result of Terex's intentional misrepresentations.

## COUNT IV
## INTENTIONAL MISREPRESENTATION/FRAUD
### (against Empire Crane)

92. American Aerial repeats and realleges the allegations contained in Paragraphs 1 through 91 above as if fully recited herein.

93. Representatives for Empire Crane made representations to American Aerial that the Terex T780 was a new truck crane.

94. These representations were false because Terex stored the Terex T780 for five months in an open air storage lot without following required protocols and procedures for prolonged storage, which meant that the Terex T780 was not a newly manufactured crane.

95. Empire Crane knew or should have known that the Terex T780 was not properly stored and, therefore, knew or should have known that its representation that the Terex T780 was a new truck crane was false.

96. American Aerial relied on the representation that the Terex T780 was a new truck crane when deciding to purchase the Terex T780, and this representation was material because American Aerial would not have entered into the sale transaction if the prolonged storage without proper procedures or protocols had been disclosed.

97. As set forth above, the Purchase Contract required the Terex T780 to be delivered to American Aerial by December 31, 2011 and that the driver knew of this strict deadline.

98.     At the time of delivery, the driver made a representation that the yellow warning light illuminated toward the end of his delivery and that he checked the fluids, which were not low.

99.     This representation was false because the computer history demonstrates a pattern of ignoring and/or turning off the warning systems and the facts demonstrate the coolant was unusually low.

100.    American Aerial relied on this misrepresentation made by the driver when deciding to purchase the Terex T780 (by accepting delivery) and this misrepresentation was material because American Aerial would not have consummated the sale if the driver had disclosed the problems with the engine and coolant.

101.    Empire Crane issued to Plaintiff a Certificate of Inspection, certifying that the Terex T780 met "Annual OSHA/ANSI B.30, PCSA #2, PCSA #4" requirements.

102.    Empire Crane made a representation that the Terex T780 met OSHA and ANSI requirements.

103.    This representation was false because, in reality, the Terex T780 failed to meet several OSHA and ANSI requirements.

104.    Empire Crane knew or should have known that the representation that the Terex T780 met OSHA and ANSI requirements was false.

105.    American Aerial relied on Empire Crane's representation that the Terex T780 met OSHA and ANSI requirements and such representation was material because American Aerial would not have purchased the Terex T780 if it knew that the Terex T780 failed to comply with several OSHA and ANSI requirements.

106. Empire Crane made the representations set forth above with the knowledge of the falsity of the representations and with disregard of whether the representations were true or false.

107. Empire Crane intended American Aerial to rely upon the above false representations.

108. American Aerial relied on Empire Crane's false representations to American Aerial's detriment, which resulted and continues to result in substantial monetary damages to American Aerial.

109. Empire Crane is liable for all damages, including but not limited to incidental and consequential damages suffered by American Aerial as a result of Empire Crane's intentional misrepresentations.

## COUNT V
## PUNITIVE DAMAGES
### (against Terex and Empire Crane)

110. American Aerial repeats and realleges the allegations contained in Paragraphs 1 through 109 above as if fully recited herein.

111. Defendants' conduct was motivated by malice, either expressed or implied.

112. Defendants are responsible for the payment of punitive damage because of the above mentioned outrageous conduct was motivated by malice, expressed or implied.

WHEREFORE, based upon the foregoing, Plaintiff, American Aerial Services, Inc., requests that this Court enter judgment in its favor on Counts I through V in an amount that is reasonable and grant it its attorneys' fees, costs and interest, and such additional relief as this Court may deem appropriate.

## JURY DEMAND

American Aerial Services, Inc. demands a trial by jury.

Dated at Portland, Maine this 9th day of May, 2013.

                        /s/ John A. Hobson
                        John A. Hobson
                        Dawn M. Harmon
                        Attorneys for Plaintiff

Perkins Thompson, P.A.
One Canal Plaza
P.O. Box 426
Portland, ME  04112-0426
(207) 774-2635
jhobson@perkinsthompson.com

**CERTIFICATE OF SERVICE**

    I hereby certify that on May 9, 2013, I electronically filed Plaintiff American Aerial Services, Inc.'s Amended Complaint with the Clerk of the Court, using the CM/ECF system. The CM/ECF system will provide service of such filed via Notice of Electronic filing (NEF) to the following NEF parties:

| | |
|---|---|
| Harold J. Friedman, Esquire<br>Erik Peters, Esquire<br>Jonathan M. Dunitz, Esquire<br>Friedman Gaythwaite Wolf & Leavitt<br>25 Pearl Street<br>Portland, ME  04101<br>207/761-0900<br>hfriedman@fgwl-law.com<br>epeters@fgwl-law.com<br>jdunitz@fgwl-law.com | Michael D. Traister, Esquire<br>Murray Plumb & Murray<br>P.O. Box 9785<br>Portland, Me  04104-5085<br>207/773-5651<br>mtraister@mpmlaw.com |
| Scott C. Sublett, Esquire<br>Cary E. Hiltgen, Esquire<br>Hiltgen & Brewer, P.C.<br>9505 N. Kelley Avenue<br>Oklahoma City, OK  73131<br>405/605-9000<br>scsublett@hiltgenbrewer.com<br>cehiltgen@hiltgenbrewer.com | Terry J. Kirwan, Jr., Esquire<br>Kirwan Law Firm, P.C.<br>7075 Manilus Center Road<br>East Syracuse, NY  13057<br>315/452-2443<br>tkirwan@kirwanlawpc.com |

                                                      /s/ John A. Hobson
                                                      John A. Hobson
                                                      Attorney for Plaintiff,
                                                      American Aerial Services, Inc.

Perkins Thompson, P.A.
One Canal Plaza
P.O. Box 426
Portland, ME  04112-0426
207-774-2635
jhobson@perkinsthompson.com