## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | |
|---|---|
| **AMERICAN AERIAL SERVICES, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) **Case No. 2:12-cv-00361-JDL** |
| **TEREX USA, LLC, and** | ) |
| **THE EMPIRE CRANE COMPANY, LLC,** | ) |
| | ) |
| **Defendants.** | ) |

## CONSOLIDATED ORDER ON TEREX'S MOTIONS TO EXCLUDE EXPERT REPORTS, OPINIONS, AND TESTIMONY (ECF NOS. 123, 134, 136, and 137)

Terex USA, LLC seeks to exclude the reports, opinions, and testimony of four expert witnesses identified by American Aerial Services, Inc.: Paul Roberts, Tom Beverly, Dennis Eckstine, and Edward P. Cox, each of whom inspected the Model T-780 truck crane that is the subject this litigation (the "Crane").  ECF Nos. 123, 134, 136, and 137.  As grounds for exclusion, Terex cites, variously, Federal Rules of Evidence 401, 402, 403, 702, 703, and 802.  Terex also requested a hearing pursuant to Federal Rule of Evidence 104(a), which was held on April 7, 2015.  As explained in more detail below, Terex's motions to exclude are granted in part and denied in part.

## I. THE *DAUBERT* STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony and states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b)  the testimony is based on sufficient facts or data;
> (c)  the testimony is the product of reliable principles and methods; and
> (d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993), the Supreme Court assigned a gatekeeper role to the courts to assure that expert testimony is not introduced at trial unless Rule 702's requirements have been met.  Thus, it is the responsibility of the trial judge to ensure that a sufficiently-qualified expert provides relevant testimony that "rests on a reliable basis."  *Beaudette v. Louisville Ladder, Inc.*, 462 F.3d 22, 25 (1st Cir. 2006).  "Expert testimony may be excluded if there is 'too great an analytical gap between the data and the opinion proffered.'"  *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 15 (1st Cir. 2011) (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  "The object of *Daubert* is 'to make certain that an expert, whether basing testimony on professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'"  *Id.* (quoting *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999)).

"When the adequacy of the foundation for the expert testimony is at issue, the law favors vigorous cross-examination over exclusion."  *Zuckerman v. Coastal Camps,*

*Inc.*, 716 F. Supp. 2d 23, 28 (D. Me. 2010) (internal quotation omitted). "If the factual underpinnings of [the expert's] opinions [are] in fact weak, that [is] a matter affecting the weight and credibility of [his] testimony." *Payton v. Abbott Labs,* 780 F.2d 147, 156 (1st Cir. 1985).

With regard to reliability, the court "considers whether 'the testimony is based on sufficient facts or data'; whether 'the testimony is the product of reliable principles and methods'; and whether 'the expert has reliably applied the principles and methods to the facts of the case.'" *Smith v. Jenkins,* 732 F.3d 51, 64 (1st Cir. 2013) (quoting Fed. R. Evid. 702). But Rule 702 "demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion" and not "that the expert's assessment of the situation is correct." *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.,* 161 F.3d 77, 85 (1st Cir. 1998). "[E]xpert testimony may be more inferential than that of fact witnesses, but an expert opinion must be more than a conclusory assertion about ultimate legal issues" to be admissible. *RTR Techs., Inc. v. Helming,* 707 F.3d 84, 93 (1st Cir. 2013) (quotation omitted).

## II. LEGAL ANALYSIS

### A. Motions to Exclude the Opinions of Paul Roberts and Tom Beverly (ECF Nos. 137 and 123)

#### 1. Factual Background

In August 2012, American Aerial hired Roaring Brook Consultants, Inc. to perform an annual OSHA standards inspection of the Crane. ECF No. 137 at 1; ECF

No. 162 at 2.  Paul Roberts, a certified crane inspector at Roaring Brook, inspected the Crane on August 30, 2012.  ECF No. 162 at 2.

Roberts did not certify the Crane after his inspection, and prepared a report (the "Roberts Report") explaining what he found: (1) a bent chord[1] on the lattice boom extension jib; (2) welds on the boom and jib that were deficient because they were undercut, had insufficient weld width, excessive buildup, and "lack of penetration;" (3) bent boom hinge cheek plates; (4) cracks at the base of the Crane's turntable; (5) the Crane's "swing lock" failed to engage when the main boom was stored in the boom cradle; (6) two outriggers on the side of the Crane which "broke free," or rose up off the ground, while the Crane was lifting 60% of its rated load capacity; and (7) the Crane's driver cab door failed to stay latched.  ECF No. 137 at 2-4; ECF No. 137-1 at 6-7.

Several days after Roberts' inspection, which was performed on September 4 and 6, 2012, American Aerial retained KB Inspection Services to inspect the welds on the Crane's turntable, boom, and jib.  ECF No. 164 at 1; ECF No. 164-3 at 3.  Tom Beverly, a KB inspector, identified 68 weld imperfections ("defective welds") which he described in a written report (the "Beverly Report").  ECF No. 123 at 1; ECF No. 123-1 at 3-6.  Though he identified the defective welds, Beverly did not reach ultimate conclusions regarding whether the welds fell short of industry standards as set forth in the American Welding Society's "AWS D14.3:2010, Specification for Welding,

---

[1] Terex defines a "chord" as "one of the principal members of a truss, especially one that lies along the top or bottom."  ECF No. 137 at 2 n.2.

Earthmoving, Construction, and Agricultural Equipment" ("AWS D14.3").  ECF No.

123 at 1, 5.  *See also* ECF No. 164 at 3.

### 2.  Terex's Objections to Paul Roberts' Report and Opinions

Terex argues that Roberts' report and testimony should be excluded because

he did not apply appropriate industry or manufacturer standards to determine

whether an identified problem amounted to a true defect in the Crane, and instead

"only identified areas that needed resolution before he would certify the Crane under

OSHA."  ECF No. 137 at 1.  Thus, Terex argues that Roberts' report and opinions

should be excluded under Federal Rules of Evidence 702 and 703 because they have

an unreliable basis.[2]  *Id.*  Terex also argues that the entire Roberts report should be

excluded under Federal Rule of Evidence 403 because it is unfairly prejudicial and

would confuse or mislead the jury and because it constitutes inadmissible hearsay

under Federal Rule of Evidence 802.  *Id.* at 2.

Terex's point-by-point objections to Roberts' report and opinions can be

summarized as follows: with regard to the bent chord, Roberts testified at his

deposition that OSHA standards do not specify the acceptable straightness for a

---

[2]  Federal Rule of Evidence 703 states that:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703.

chord; instead, the manufacturer of the crane does.  *Id.* at 6.  But Roberts admitted that he did not apply Terex's standards to determine if the bent chord fell within those standards.  *Id.*  Therefore, Terex argues, Roberts' opinion is "not based on good grounds" and is inadmissible under Rule 702.  *Id.*

Terex also objects that "Roberts did not do the work necessary to determine if the welds were deficient," because he did not measure the welds or conduct other tests himself, but instead suggested that American Aerial arrange to have the defective welds evaluated by someone else under applicable standards.  *Id.* at 7 (citing Roberts deposition, ECF No. 137-2 at 12-13).

With regard to the bent boom cheek plates, Terex claims that Roberts simply "speculated there was something wrong," and that his assertion of a deficiency has no reliable basis because he could not state what caused the "bowing" that he observed.  *Id.* at 8.  *See also* ECF No. 137-2 at 6 ("I have just never seen anything like it before.  So that's my – it looks to me like something was wrong, that's all.").

Terex also argues that Roberts' opinion with regard to the cracks in the Crane's turntable should be excluded because he did not remove paint to determine whether the steel itself was cracked or only the paint.  ECF No. 137 at 8.

Terex faults Roberts' diagnosis of a problem with the "swing lock" on the Crane, and cites the testimony of a competing expert who described how the main boom is stored by a "swing brake" as opposed to a "lock."  *Id.* at 4 (citing ECF No. 137-4 at 4, 5).

With regard to the failed load test, Terex objects that Roberts cannot identify any regulation or OSHA requirement that disqualifies a crane when two of its outriggers break free, or rise up from the ground.  *Id.* at 9.

Finally, Terex objects that Roberts' identification of a problem with the latch on the driver's cab door is irrelevant under Federal Rule of Evidence 401 and thus inadmissible under Rule 402 because he does not know if the latching issue existed when the Crane left the Terex factory.[3]  *Id.* at 9-10.

### 3.  Terex's Objections to Tom Beverly's Report and Opinions

Terex argues that although Beverly's report indicates that he found 68 weld defects, he did not determine whether those defects affected the structural integrity of the Crane's jib, and did not determine whether the defects fall outside of the parameters established by applicable industry standard as set forth in the AWS D14.3.  ECF No. 123 at 1, 5.  Therefore, Terex argues, Beverly's observations are not relevant to the question of whether there was a defect or deficiency in the Crane which would have been subject to repair under an express or implied warranty, and should be excluded pursuant to Rule 402.  *Id.* at 5-6.

Terex also argues that Beverly's report should be excluded from evidence pursuant to Rule 702 because "[i]dentifying imperfections in the welds does not help

---

[3] Federal Rule of Evidence 401 states that evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence;" and "the fact is of consequence in determining the action."  Fed. R. Evid. 401.  "[T]his standard grants the district court substantial latitude in admitting testimony and for that reason, only in exceptional cases will reversible error be found in the district court's determination of the probative value of testimony in a particular case." *Cummings v. Standard Register Co.,* 265 F.3d 56, 63 (1st Cir. 2001) (quoting *Conway v. Electro Switch Corp.,* 825 F.2d 593, 597 (1st Cir. 1987)) (quotation marks omitted).  Federal Rule of Evidence 402 states that "[i]rrelevant evidence is not admissible."  Fed. R. Evid. 402.

the jury determine a fact of consequence, i.e., whether the imperfections are something Terex . . . should have repaired but did not." *Id.* at 6.

Additionally, Terex argues that Beverly's report should be excluded from evidence pursuant to Rule 403 as unduly prejudicial because it does not differentiate between defective welds and welds that fall short of the AWS D14.3 ("rejectable welds").[4] *Id.* Terex claims that the distinction between defective welds and rejectable welds is a subtle one which is likely to confuse the jury. *Id.*

Finally, Terex argues that Beverly's report constitutes hearsay under Federal Rule of Evidence 801 because it is an out-of-court statement by a declarant who is not testifying in court that is submitted to prove the truth of the matter asserted, and thus, should be excluded pursuant to Rule 802.[5] *Id.* at 7.

### 4. Analysis

It would be premature to conclude in advance of trial that both Roberts' and Beverly's reports constitute inadmissible hearsay under Rule 802 that are not subject to any of the exceptions set forth in Rule 803. I therefore decline to exclude them at

---

[4] Federal Rule of Evidence 403 states that evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. The First Circuit has noted that "all probative evidence is prejudicial, and the district court [does] not abuse its discretion in finding that . . . statements [are] not *unfairly* prejudicial." *Kelly v. Airborne Freight Corp.*, 140 F.3d 335, 348 (1st Cir. 1998). "In Rule 403, 'prejudice' does not mean the damage to the opponent's case that results from the legitimate probative force of the evidence; rather, it refers to the unfair advantage that results from the capacity of the evidence to persuade by illegitimate means." *Voisine v. Danzig*, 1999 WL 33117132, at *2 (D. Me. Oct. 26, 1999) (quoting 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5215 at 274–75 (1978)).

[5] Federal Rule of Evidence 802 generally bars the admission of hearsay evidence. Fed. R. Evid. 802. Hearsay evidence is a statement by the declarant, which is not made while testifying at the current trial or hearing, that a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c).

this stage of the case.  American Aerial indicated at the hearing on Terex's motion that, although expert reports generally constitute hearsay, it may nevertheless seek to admit portions of Roberts' or Beverly's report pursuant to a hearsay exception. Therefore, the basis for exclusion has yet to be established and I deny the motion as to this objection.  Terex may renew its objection at trial if appropriate.

I also decline to exclude Roberts' and Beverly's testimony.  The substance of their testimony is more narrative than expert, yet relies upon Roberts' and Beverly's knowledge of and experience with inspecting heavy equipment.  Roberts will testify that he is a certified crane inspector; that American Aerial asked him to inspect the Crane and certify that it met OSHA-based standards; that he observed problems which caused him to be concerned; and that he consequently did not certify the Crane. Beverly will testify that he observed defective welds that he thought should be evaluated by a more specialized expert to determine compliance with AWS D14.3. ECF No. 123-1 at 6.  Such testimony is within Roberts' and Beverly's expertise as inspectors, is prefatory to that of Dennis Eckstine, American Aerial's crane safety expert, and Edward Cox, American Aerial's welding expert, and will assist the jury in understanding the highly technical evidence in the case.  In their depositions and reports, Roberts and Beverly each restricted himself to what he personally observed, and neither expressed an opinion as to the ultimate question in the case, i.e., whether the Crane is so defective as to breach the applicable warranties.  *See* ECF No. 123-2 at 2; ECF No. 137-1; ECF No. 137-2.

I conclude that Roberts' and Beverly's testimony has a reliable basis, will assist the jury's understanding of the evidence, and is admissible under Rules 403 and 702. I also conclude that their opinions will be relevant, although not conclusive, to the issue of the condition of the Crane and the identification of concerns that led to the more detailed examinations performed by Dennis Eckstine and Edward Cox, and are admissible under Rule 402.

Accordingly, Terex's Motion to Exclude Tom Beverly's Report and Opinions (ECF No. 123) and its Motion to Exclude Paul Roberts' Report and Opinions (ECF No. 137) are **DENIED**.

## B. Terex's Motion to Exclude Dennis Eckstine's Report, Opinions, and Testimony (ECF No. 136)

Terex seeks to exclude the reports, opinions, and the testimony of Dennis Eckstine, identified by American Aerial as an expert on cranes.   ECF No. 136. Eckstine inspected the Crane on July 11, 2013, *id.* at 2, and produced a written report (the "Preliminary Report") detailing his findings on August 1, 2013, ECF No. 136-2. As grounds for exclusion, Terex argues that Eckstine failed to apply a "rigorous" analysis as required by Rule 702, *see* ECF No. 136 at 1; that portions of the Preliminary Report and Eckstine's testimony are impermissibly cumulative, and would confuse or mislead the jury and therefore should be excluded pursuant to Rule 403, *see id.* at 6, 9; and that portions of Eckstine's testimony should be excluded as inadmissible hearsay under Rule 802, *id.* at 6-7.

### 1.  Eckstine's Opinion Regarding Breach of Contract

At page 13 of his Preliminary Report, Eckstine stated that the alleged defects in the Crane "constitute a material breach of contract and applicable warranties by defendants Terex and Empire Crane," and that "[t]here was a failure to deliver a crane ready for service and in new condition."  ECF No. 136-2 at 13.  Terex objects to these statements and argues that they should be excluded, along with any related testimony, because the court previously granted summary judgment in favor of Terex on American Aerial's claim for breach of contract "and specifically held that the Crane was new."  ECF No. 136 at 3 (citing ECF No. 108).  Terex asserts that the court's summary judgment order is the law of the case, and therefore, Eckstine should be precluded from revisiting these issues.  *Id.* (citing *F/V SAILOR, Inc. v. City of Rockland*, 329 F. Supp. 2d 176, 178 (D. Me. 2004).  Terex also notes that Eckstine has not been qualified as an expert on contracts.  *Id.*

American Aerial does not dispute Terex's argument regarding breach of contract and that the Crane was new, focusing instead on the admissibility of Eckstine's opinion on its claim for breach of the warranty of merchantability.  *See* ECF No. 165 at 4.  Accordingly, Terex's motion to exclude is granted with regard to this objection.  Eckstine's opinion concerning whether the Crane was "new" and whether the alleged defects in the Crane constitute a breach of contract are excluded.

### 2.  Eckstine's Opinion Regarding Final Inspection of the Crane

On page 14 of the Preliminary Report, Eckstine states that "[i]t appears that this machine [the Crane] did not go through final inspection by Terex as evidenced

by the blank Terex inspection sticker on the door," and "[t]he 'Terex Quality OK' decal is blank suggesting the machine was not inspected by Terex . . . ."  ECF No. 136-2 at 14.  Terex argues that these statements are speculative and involved no application of expertise, and are thus inadmissible under Rule 702.  ECF No. 136 at 4.  Terex also claims that this statement "does not 'fit' the facts of the case" because it will introduce evidence that a final inspection was performed on the Crane.  *Id.* (citing Terex factory inspection documents, ECF No. 77-3 at 3-6).  Alternatively, Terex asserts that Eckstine's opinion would confuse or mislead the jury and should therefore be excluded under Rule 403.  *Id.*

Terex's motion to exclude is denied on this point.  Terex does not dispute that Eckstine personally observed the blank inspection sticker on the door of the Crane.  *See* ECF No. 136 at 4.  As a crane expert with documented experience in the industry, *see* ECF No. 165-1, it is not speculative, confusing, or misleading for Eckstine to render an opinion that a blank inspection sticker "suggests" that no inspection was performed, or makes it "appear" that none took place.

### 3. Bent Turntable Plate

On page 15 of the Preliminary Report, Eckstine states that the "[t]urntable side plates are bent and need to be checked to Terex specifications."  ECF No. 136-2 at 15.  Terex objects that this does not constitute an opinion that the turntable side plates are defective or somehow breached a warranty, and therefore is irrelevant and likely to confuse or mislead the jury.  ECF No. 136 at 4 ("Eckstine does not know if there is a problem with the bent side plates.").

Eckstine's statement appears as a bullet point in what he calls "a list of the more significant problems that continue to be unresolved[.]"  ECF No. 136-2 at 14-16. That the turntable side plates were bent is probative of the general condition of the Crane.  Terex does not explain why Eckstine's observation of bent turntable plates and his inclusion of it on a list of unresolved problems is irrelevant to the case, or how this would confuse jurors.  If Eckstine's opinion is not sufficiently definitive for Terex, then it may ask him to elaborate on cross-examination.  The motion to exclude is denied as to this objection.

### 4. Opinions Which Allegedly Lack Analysis

Terex argues that several of Eckstine's opinions—those concerning alleged defects in the Crane's cab, the front storage box drain hole, certain "weld issues," alleged problems related to the Crane's exhaust system, alleged problems with the Crane's hydraulic hoses, and the alleged failure of the bubble level in the Crane's operator cab—should be excluded pursuant to Rule 702 because Eckstine did not perform his own independent analysis of the Crane.  ECF No. 136 at 4-7.  Instead, Terex argues, Eckstine relied on information provided to him by Jim Read, the president of American Aerial, and he did not apply any expertise to the facts of the case.  *Id*.  An expert may rely on data provided by a plaintiff, and therefore, Eckstine's report and testimony should not be excluded simply because he relied upon information provided by Read.  *See Downeast Ventures, Ltd. v. Washington Cnty*, 2007 WL 679887, at *4 (D. Me. Mar. 1, 2007); *Great N. Storehouse, Inc. v. Peerless Ins. Co.*, 2000 WL 1900299, at *2 (D. Me. Dec. 29, 2000) (citing *S. Port Marine, LLC v. Gulf*

*Oil Ltd. P'ship.*, 234 F.3d 58, 67 (1st Cir. 2000)).  Furthermore, Eckstine's asserted failure to perform an independent analysis of the Crane does not withstand closer scrutiny for the following reasons:

First, Terex objects that Eckstine "has not applied expert knowledge to the issue" with regard to the Crane's driver cab door, and claims that he "simply notes the existence of the loose striker pin and dents and states American Aerial should have received a new cab."  ECF No. 136 at 5.  Yet in the Preliminary Report, Eckstine also notes that the problem "has not been able to be fixed," suggesting a problem beyond a loose door latch.  ECF No. 136-2 at 14.  At his deposition, he testified that the door appeared "distorted and painted over," although he could not identify when it was painted over, or what caused it to be distorted.  ECF No. 136-3 at 12.  I am not persuaded that Eckstine failed to apply expertise simply because he relied upon Read's representation that the driver cab door had been problematic since it was first delivered to American Aerial.  This objection goes more to the factual basis for Eckstine's opinion and is therefore appropriately addressed by cross-examining both Eckstine and Read instead of outright exclusion.  *See Zuckerman*, 716 F. Supp. 2d at 28 ("When the adequacy of the foundation for the expert testimony is at issue, the law favors vigorous cross-examination over exclusion.") (internal quotation omitted).  The availability of cross-examination also reduces the likelihood of Eckstine's testimony confusing or misleading the jury, contrary to Terex's assertion.  ECF No. 136 at 5.  The motion to exclude is therefore denied with regard to this objection.

Second, with regard to Eckstine's conclusion that there was ice buildup in the Crane's front storage box drain hole, Terex objects that Eckstine did not personally observe evidence of ice in that compartment but instead relied upon statements by American Aerial.  *Id.*  However, Eckstine, as an expert on cranes, would not need to personally observe ice to determine whether the drainage hole was too small, and whether it might cause ice-related problems in the winter months.  I therefore see no merit to the assertion that "no expertise was applied," *see id.*, nor any indication that Eckstine's method was unreliable.  The motion to exclude is denied with regard to this objection.

Third, with regard to the exhaust issues, the Preliminary Report states that "[e]ngine exhaust is unguarded and on the deck of the [C]rane" and that "[i]t is also very close to the engine coolant cap."  ECF No. 136-2 at 14.  Terex objects that the relevant ANSI standard[6] does not require engine exhaust pipes to be guarded—it permits them to be guarded *or* insulated, and points to this fact as proof that Eckstine "did not determine if the exhaust pipe was insulated; he merely eyeballed the exhaust pipe and stated it was a danger."  ECF No. 136 at 6 (citing ECF No. 136-3 at 13).  However, at his deposition, Eckstine was not asked about exhaust insulation; he was only asked what was wrong with the guard on the exhaust pipe.  *See* ECF No. 163-3 at 13.  Furthermore, Eckstine also testified to another problem with the exhaust— that it was too close to the "walking surfaces of the [C]rane and close to the coolant cab."  *Id.*  These observations apply expertise regarding the design and manufacture

---

[6] American National Standards Institute Standard B30.5-2007 ¶ 5.1.9.2.

of cranes, and undercut Terex's assertion to the contrary. Terex also seeks to have Eckstine's opinion excluded under Rule 403 on the basis that it would mislead or confuse the jury, but does not explain why Eckstine's opinion is confusing or misleading. The motion to exclude is therefore denied with regard to this objection.

Fourth, Terex objects that Eckstine is not a welding expert yet nevertheless "parrot[ed] what he heard from Read or other experts," and "is merely repeating inadmissible hearsay." ECF No. 136 at 6 (citing Rules 403, 702, and 802). This mischaracterizes the Preliminary Report, which merely states that "[n]umerous welds which were created by Terex during the manufacturing process *did not pass inspections* conducted by Paul Roberts . . . and [Tom] Beverly." ECF No. 136-2 at 14 (emphasis added). This statement does not repeat any language or conclusions contained in the Beverly or Roberts reports, and therefore is not hearsay. The statement is not cumulative or unreliable, in that it simply states a fact in evidence. The motion to exclude is therefore denied with regard to this objection.

Fifth, with regard to the Crane's hydraulic hoses, Terex objects to Eckstine's conclusion that the hoses needed to be replaced because they were abraded and too long, arguing that Eckstine did not personally see any abraded hoses or measure them to determine if they were too long. ECF No. 136 at 6-7. I am not persuaded that Eckstine failed to apply expertise simply because he relied upon Read's representations. This objection is aimed squarely at whether Eckstine's opinion has an adequate factual foundation and is therefore more appropriately addressed by cross-examining Eckstine instead of outright exclusion. *See Zuckerman*, 716 F. Supp.

2d at 28.  Furthermore, Eckstine noted in the Preliminary Report that the "[e]xterior of [the] hydraulic jacks are scuffed due to repairs by Empire/Terex," which evidences Eckstine's own inspection of the hydraulic system.  ECF No. 136-2 at 15.[7]  The motion to exclude is denied with regard to this objection.

Sixth, Eckstine testified at his deposition regarding the bubble level in the Crane's operator cab that he had "examin[ed] the machine as it was set" and did not adjust the bubble level.  ECF No. 136-3 at 17-18.  Terex objects that this renders Eckstine's opinion unreliable because he "does not know whether the bubble level was properly adjusted when it left Terex USA's possession."  ECF No. 136 at 7.  I am not persuaded by Terex's objection because, as with Eckstine's observations of the driver's cab door and the hydraulic system, Terex's challenge is to the factual basis for Eckstine's testimony, the preferred recourse for which is cross-examination and not exclusion.  *See Zuckerman,* 716 F. Supp. 2d at 28.  Therefore, the motion to exclude is denied with regard to this objection.

### 5.  Eckstine's Opinion Regarding Breach of Warranty

Terex also objects to Eckstine's opinion that it breached "applicable warranties," and argues that this constitutes expert testimony on a legal issue.  ECF No. 136 at 7-8 (citing ECF No. 136-2 at 13).

"Expert testimony that consists of legal conclusions cannot properly assist the trier of fact[.]"  *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 100 (1st Cir. 1997) (quotation omitted).  An expert witness may not, for example, testify that a party

---

[7]  Terex also objects that Eckstine's opinions are hearsay, *see* ECF No. 136 at 7, yet offers no explanation as to how this could be the case if he testifies as to the opinion in court.

incurred damages as a "proximate result" of something, or characterize a party's action as "wrongful." *James*, 741 F. Supp. 2d at 342.  Thus, while Eckstine, as an expert on cranes, may testify regarding defects in the Crane, he may not testify as to whether Terex "breached" any applicable warranty.  Terex's motion to exclude is granted with regard to this objection.

### 6. Alleged "Parroting" of American Aerial's Complaints

Terex also seeks to exclude a list of nine problems identified by Eckstine in his report, arguing that Eckstine's list is "nearly identical to the list of issues American Aerial sent to Empire Crane."  ECF No. 136 at 8-9 (citing ECF No. 136-2 at 13-14) (listing such problems with the Crane as damaged tires, a leaking outrigger beam cylinder seal, ice in the front storage compartment, a broken serpentine belt, a broken radiator fan shroud, rusting paint, a hole in the exhaust pipe, incorrect manuals, and low coolant in the radiator).  Terex claims that Eckstine's testimony regarding these complaints lacks expertise as required by Rule 702 and is cumulative and should be excluded under Rule 403 because "[d]oubtless American Aerial will have Read testify about these issues[.]"  *Id.* at 9.

Terex's motion to exclude is denied with regard to this issue.  The Preliminary Report identifies the nine listed items as problems which "were reported by American Aerial."  ECF No. 136-2 at 13.  Eckstine does not purport to list the items as if he had discovered them himself.  In the event that American Aerial asks both Read and Eckstine to list these nine items for the jury, then Terex may renew its objection that the evidence is cumulative at trial.

### 7. Conclusion

For the reasons discussed above, Terex's Motion to Exclude Dennis Eckstine's Report, Opinions, and Testimony (ECF No 136) is **GRANTED IN PART** with regard to Eckstine's opinions and testimony concerning whether Terex breached a contract with American Aerial, whether the Crane was "new" when American Aerial purchased it, and whether Terex breached any express or implied warranty. The motion is otherwise **DENIED**.

## C. Terex's Motion to Exclude Edward P. Cox's Opinions and Testimony (ECF No. 134)

Terex also seeks to exclude the report, opinions and testimony of Edward P. Cox, who was identified by American Aerial as a welding expert. ECF No. 134 at 1. Cox prepared two reports concerning welds on the Crane, one dated August 4, 2013 (the "August 4 Report"), and the second dated October 5, 2013 (the "October 5 Report"). *Id.*; ECF No. 134-2. Cox personally inspected the Crane on October 1, 2013. ECF No. 134 at 3. As grounds for exclusion, Terex claims that the August 4 Report and Cox's opinions are the product of unreliable data under Rule 702, and based on unreliable grounds under Rule 703. For the reasons discussed below, Terex's motion is granted in part and denied in part.

### 1. The August 4 Report

Terex argues that Cox did not personally inspect the Crane before preparing the August 4 Report, and instead relied upon the Beverly and Roberts Reports (ECF Nos. 123-1 and 137-1). ECF No. 134 at 5. Beverly inspected the crane in September 2012 and identified defective welds as discussed in greater detail, above. Roberts

inspected the Crane on August 30, 2012, to determine whether it complied with OSHA standards, and also identified defective welds among other issues, as discussed in greater detail, above. Terex asserts that the information from Beverly and Roberts was unreliable because neither one applied the standards set forth in the AWS D14.3. *Id.* at 6. Therefore, Terex argues, the opinions expressed in Cox's August 4 Report should be excluded under Rule 703 because they are not based on reliable grounds. *Id.* at 7.

The motion is denied as to Rule 703 because Cox personally inspected the Crane after writing the August 4 Report, and he will testify with the benefit of his own observations.

### 2. Testimony Regarding Defective and Rejectable Welds

Terex also seeks to exclude Cox's testimony that "defective and rejectable" welds found by Roberts during the OSHA inspection in August 2012 caused the Crane "to be removed from service and to remain out of service." *Id.* at 7 (citing 134-1 at 6, ¶ 6). Terex argues that such an opinion speaks to American Aerial's motivations, which are beyond the scope of Cox's expertise or knowledge. *Id.* American Aerial counters that it is within Cox's expertise to know that a failure to meet welding standards would cause the Crane to be removed from service. ECF No. 161 at 5-6. American Aerial also argues that Cox is permitted to rely on information from Read that relates to removing the Crane from service. *Id.* at 6 (citing *Wetmore v. McDonald, Page, Schatz, Fletcher & Co., LLC,* 2007 WL 3332792, at *2 (D. Me. Nov. 7, 2007)).

The focus of Cox's analysis was whether the Crane's welds were defective, not American Aerial's motivations for removing the Crane from service. Therefore, to the extent that Cox has an expert opinion regarding why the Crane was in fact removed from service in August 2012, such an opinion is outside of Cox's expertise and is excluded. Terex's motion is therefore granted with regard to this objection. I note, however, that this ruling excludes Cox's testimony as to whether the Crane *was in fact* removed from service due to concern over defective welds after failing the August 2012 OSHA inspection performed by Paul Roberts. It does not exclude Cox's testimony, based on his expertise and experience, as to whether the Crane *should* have been removed from service after it failed the OSHA inspection.

### 3. Testimony Regarding Welds That Cox Measured With A Gauge

Terex seeks to prevent Cox from testifying that any of the 76 defective welds he measured failed to meet the standards of the AWS D14.3. ECF No. 134 at 7-8. Terex contends that because Cox did not review supplemental engineering drawings before his deposition, he did not know the designed size of each weld. *Id.* According to Terex, Cox needed to know the designed size of a weld in order to know which gauge to use to accurately measure the weld and determine if it complied with the AWS D14.3. *Id.* Therefore, Terex claims that Cox's opinions and testimony are unreliable under Rule 702. *Id.* at 8.

Terex's own welding expert, Mikal Balmforth, testified that visually inspecting welds for cracks and poor weld fusion is permissible under AWS standards, even without a gauge. ECF No. 161-6 at 2 ("[A] crack is a violation of the code no matter

what size it is. So, you don't need a gauge to tell you that that violates the code."); *see also* ECF No. 161-7 (Balmforth noting in an email that "[t]hings like cracks and weld fusion can be inspected without a gauge[.]").  Therefore, Cox may testify regarding cracks and defects in weld fusion discovered by visual inspection, whether or not he measured the weld with a gauge.[8]

Cox may also testify regarding the remaining welds that he measured with a gauge.  While his testimony reflects uncertainty over weld sizes, Cox also stated that he used multiple gauges of different sizes to make multiple readings in order to compensate for his uncertainty.  ECF No. 95-2 at 6-7.  Because "[e]xpert testimony may be more inferential than that of fact witnesses," *RTR Techs,* 707 F.3d at 93, Cox's testimony is admissible.   Rather than an unreliable method, Cox's uncertainty evidences a weak foundation, to which the preferred recourse is "vigorous cross-examination over exclusion." *Zuckerman*, 716 F. Supp. 2d at 28.  Accordingly, Terex's motion is denied with regard to this objection.[9]

---

[8] This includes the cracks Cox testified he found in 12 welds along the main boom section of the Crane. ECF No. 95-1 at 24-25.

[9] Terex asserts that "Cox could not testify . . . that the welds were outside the permissible tolerances set by AWS D14.3."  ECF No. 134 at 8.  American Aerial claims that this contention is misleading, because "Cox testified that none of the 76 photograph welds violated AWS standards but all these 76 welds violated the applicable Terex specifications."  ECF No. 161 at 7 n.2.  American Aerial did not cite any supporting authority and did not explain why Terex's welding standards would control the question of whether a defect exists, rather than the AWS standards.  Although Terex addressed this competing standards issue at oral argument, it did not address the issue in its brief.  Because this issue is not yet fully briefed, I will not decide at this time whether one standard is applicable over the other.

### 4. Testimony Regarding "Inaccessible" Welds

Terex also seeks to exclude Cox's testimony regarding 592 welds that he photographed but did not measure.  ECF No. 134 at 8-10.  Cox's October 5 Report stated that the welds "*probably* . . . contained noncompliant weld connections."  ECF No. 134-2 at 4.  Terex argues that Cox "does not identify any engineering, statistical or scientific basis for this opinion."  ECF No. 134 at 9.  As noted above, AWS standards permit a visual inspection without a gauge to determine whether there are cracks in a weld or whether there is poor weld fusion.  ECF No. 161-6 at 2; ECF No. 161-7.  Therefore, Cox may testify about these two types of alleged defects if he observed them but did not measure them.

With regard to the remaining "inaccessible" welds which Cox did not measure, Cox stated in his October 5 Report that he based his opinion on his "observations of the accessible regions" of the Crane.  ECF No. 134-2 at 4.  Cox's observation of accessible weld defects, combined with his 37-year academic and professional background as a welding expert, specifically with regard to heavy construction equipment, satisfies me that he has a reliable basis to offer an opinion as to the probability that inaccessible defects exist on the Crane.  As an expert, Cox may offer an inferential opinion, *RTR Techs., Inc.,* 707 F.3d at 93, and to the extent that those inferences rest upon a weak foundation, they are ripe for cross-examination by Terex.  Therefore, the motion to exclude is denied with regard to this objection.

### 5. Cox's "Gratuitous Comments"

Cox stated in the October 5 Report that the Crane "cannot pass certification criteria and therefore cannot be legally operated."  ECF No. 134-2 at 4.  Cox also stated that Terex's "dimension and inspection criteria[ ] were probably also violated." *Id.* at 5.  Terex argues that these two comments should be excluded because Cox did not identify which specific Terex specifications were violated, which certification criteria he was referring to, or how those criteria prevent the Crane from being legally operated.  ECF No. 134 at 10.   These objections go to the factual basis of Cox's expert opinion under Rule 702, and is a matter of credibility rather than admissibility.  *RTR Techs.,* 707 F.3d at 93.  *See also, Zuckerman*, 716 F. Supp. 2d at 28.   Terex may examine the factual basis for Cox's opinion in cross-examination.   The motion to exclude is denied with regard to this objection.

### 6. Legibility of Engineering Drawings

In Cox's October 5 Report, Cox stated that he was initially provided illegible or incorrect engineering drawings.  ECF No. 134-2 at 4.   Terex alleges that American Aerial did not provide its supplemental drawings to Cox until two weeks before his deposition and that Cox did not review them prior to his deposition.  ECF No. 134 at 10.   Terex thus seeks to prevent Cox from testifying that he did not have legible or correct engineering drawings.  *Id.*   American Aerial does not argue with Terex's timeline, i.e., that American Aerial did not provide the supplemental drawings to Cox until two weeks before his deposition and that Cox did not review them prior to his deposition.  *See* ECF No. 161.   Nor does American Aerial argue that the illegible

24

drawings posed much difficulty for Cox in forming opinions about the size of the welds and other specifications.  *Id.*  Nevertheless, Terex fails to identify any evidentiary grounds for excluding Cox's testimony about the legibility of the engineering drawings he reviewed.  *See* ECF No. 134 at 10.  This objection is easily remedied by cross-examination, and accordingly, the motion to exclude is denied with regard to this objection.

### 7.  Opinions Developed After Cox's Deposition

Finally, Terex also seeks to exclude any opinions arrived at, or based on work performed after Cox's deposition.  *Id.* at 10-11.  Terex claims that it was not provided with a supplemental report of Cox's opinions after his deposition as required by Federal Rule of Civil Procedure 26(e), and, therefore, Cox should not be permitted to testify to any opinions that are different from those expressed either in his August 4 Report, his October 5 Report, or his deposition testimony.  *Id.* at 11.  American Aerial has indicated that Cox will not offer any opinions that differ from those contained in either report, ECF No. 161 at 8.  Therefore, Terex's motion to exclude on this basis is denied, with leave to renew its objection in the event that Cox seeks to offer an opinion based on observations or conclusions which post-date his deposition.

### 8.  Conclusion

Terex's motion to exclude (ECF No. 134) is **GRANTED IN PART** with regard to Cox's opinion concerning why the Crane was removed from service and opinions formed after Cox's deposition.  The motion to exclude is otherwise **DENIED**.

## III. CONCLUSION

For the preceding reasons:

1. Terex's Motion to Exclude Tom Beverly's Report and Opinions (ECF No. 123) is **DENIED**.


2. Terex's Motion to Exclude Paul Roberts' Report and Opinions (ECF No. 137) is **DENIED**.


3. Terex's Motion to Exclude Dennis Eckstine's Report, Opinions, and Testimony (ECF No. 136) is **GRANTED IN PART** with regard to Eckstine's opinions and testimony concerning whether (a) Terex breached a contract with American Aerial, (b) whether the Crane was "new" when American Aerial purchased it, and (c) whether Terex breached any express or implied warranty.  The motion is otherwise **DENIED**.


4. Terex's motion to exclude (ECF No. 134) is **GRANTED IN PART** with regard to Cox's opinion concerning why the Crane was removed from service and opinions he formed after his deposition, if any.  The motion is otherwise **DENIED**.


**SO ORDERED.**

**This 29th day of April 2015.**

    **/s/ JON D. LEVY**
**U.S. DISTRICT JUDGE**
